Turley, J.
delivered the opinion of the court.
This case has been submitted to the consideration of a jury-on two occasions in the court below. On the first, a verdict was rendered for the defendant in error for the sum of four hundred and forty dollars, which was set aside and a new trial granted. On the second, for the sum of two hundred dollars, for which judgment was given, to reverse which, this writ of error is prosecuted. To the granting a new trial on the first verdict, a bill of exceptions was taken, setting forth the proof upon which it was rendered, and it is now contended that the court erred in so doing, and that judgment on the finding ought now to be given by this court.
This is an action of trespass on the case, against one sought tobe charged as a bailee, for an injury done to property entrusted to his care. To enable the plaintiff to maintain it, it is necessary that he should show, not only, that there was an injury done, but also, that he had a general or special ownership in the goods charged to have been delivered to the defendant. To do this, the deposition of William C. Crumbacker was read, which stated that he was agent for J. W. Pickett, the plaintiff, in 1832, and had some books damaged, which had been sent from Franklin to Columbia in a wagon drove by a negro, who said he belonged to the defendant, Walter S, Jenkins; and also the testimony of Terry H, Cahal was heard, who stated “that the plaintiff had written to him to bring the suit for the injury done to the books, that he sent the commission to him, directed to Cincinnati, and that he took the deposition of Crumbacker and forwarded it to the court.” This testimony was objected to as illegal. The question then is, not whether the deposition of Crumbacker would of itself have been sufficient to support the verdict, but whether the testimony of Terry H. Cahal was illegal, and whether it be of a character which might have influenced the jury in their deliberations on the subject. That it was illegal, we cannot doubt; it purports to give a detail of a correspondence between the plaintiff in the action and his attorney. If it contain any thing pertinent to the matter in controversy, or which might be made to have an undue bearing on the jury, that it *485 ought not to have been heard, is palpable. No rule of evidence is better settled or based on wiser principles, than that which says that no man shall give evidence for himself. To sustain the legality of this proof would be to destroy the rule. That the testimouy though not of itself sufficient to establish the right of property in the plaintiff, may in connection with Crumbacker’s deposition, have induced the jury so to find their verdict, is, we think equally clear. Crumbacker was a young man aged about twenty years, so far as the court can see, a stranger in the country. He had caused the books to be put on board the wagon of defendant; he bad attended to the transaction throughout, in this state, without declaring his agency, so far as the proof shows; his testimony was important to establish the fact as to sending the books in the wagon of the defendant, and the manner and circumstances under which it was done; this he could not prove, had he himself been the plaintiff. All these things were calculated to cast a shade over his testimony, and we cannot say what weight the jury might have given to it uncontradicted. But we can say that the testimony of an attorney of known standing and respectability, proving that he had corresponded with the plaintiff, and had been instructed by him to bring the suit, must have added great weight to it, especially when the court said upon the application to reject it, that it was a circumstance from which the jury might presume property in the plaintiff.
The court below then committed no error in setting aside the’verdict and granting a new trial; it would have been error, not to have done so.
The second question for consideration, is, whether the judgment on the last verdict can be sustained. On this point the'same remarks are to be made as on the first. Mr. Cahal’s testimony is] again heard, .and though there are other things contained in it, which are legal, yet that portion of it which says that Pickett had corresponded with him and had attended to the taking and forwarding dépositions, is subject to the same objections urged against his testimony as detailed in the first trial; and moreover, we think the charge is exceptionable. The court below says to the jury, ‘‘that if Jenkins had two black drivers, that it was immaterial whether he had ever trust- *486 ec' l^'s younger driver lo make contracts for him or not if he sent him with his wagon and team, and had been in a habit o hauling for other people.” Now if by this charge, it is , 1 1 J . ° ’ meant that a common earner can never send his wagon and team upon his own business, under the care and management of a person who never has contracted for him, and is not au-thorised to contract for him, without having his estate endangered by being made to carry goods by the acts .of others, without his knowledge or consent, we deny the truth of the proposition, and this seems to be the design of the charge, which must have been intended to meet that part of the testimony, which shows that the driver of the wagon was a young negro who had never been allowed to make contracts for hauling, who had never before been trusted with a wagon and team alone, and who was on this occasion sent to Nashville with a load of cotton for the defendant, with particular instructions to bring home salt, and not to receive goods of any description for carriage.
The case will be reversed and remanded for a new trial.
Judgment reversed.